

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Joseph Sweat, | ) | Docket No. 2024-60-3029 |
| Employee, | ) | |
| v. | ) | |
| Bellsouth Telecommunications, LLC, | ) | State File No. 5770-2023 |
| Employer, | ) | |
| And | ) | |
| Old Republic Insurance Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an expedited hearing on February 25, 2025, on Joseph Sweat's request for treatment with a new doctor. Bellsouth Telecommunications opposed the request. The Court agrees with Bellsouth and denies Mr. Sweat's request.

### Claim History

Mr. Sweat injured his spine while working for Bellsouth Telecommunications on January 17, 2023. Bellsouth accepted the claim, and Mr. Sweat treated with Dr. Christopher Kauffman, whom he chose from a panel.

Mr. Sweat testified that Dr. Kauffman's care has yielded little relief from his low-back pain. He discussed his enduring symptoms throughout the past 22 months and said Dr. Kauffman has offered no "action plan" to ensure his healing. He continues treating with Dr. Kauffman, mostly to obtain refills of pain medications.

The injury has had a dramatic impact on his life. Mr. Sweat testified that he was terminated because he could not perform his job full duty, and he cannot find other employment with his continuing work restrictions. He has no income currently. Mr. Sweat also said that he must re-position himself frequently due to the ongoing back pain. He cannot walk for any appreciable duration, so he cannot enjoy outdoor activities as he once did. Mr. Sweat maintained that before the work accident, he had no difficulty performing

1

his duties while in the Marines, as an EMT, and then for Bellsouth Telecommunications. The experience has been "terrible," he said, and he does not relish the idea of simply taking medications to mask the pain; he wants to get better. As to Dr. Kauffman, Mr. Sweat said, "I feel that he never really took me seriously. He never believed that I—that I was hurt."

*Authorized treatment*

Dr. Kauffmann has treated him conservatively, and throughout *every visit,* the doctor's records state: "The patient's work related condition is lumbar strain. Patient has multilevel degenerative changes on MRI which are preexisting and not related to the work event."

Treatment began in April 2023, with Dr. Kaufman reviewing MRI results ordered from a clinic. Dr. Kauffman's notes from the first visit state that he reviewed the report and films, and they showed "[c]hronic multilevel degenerative changes. No acute abnormality noted[.]"

For the first few months, medications, physical therapy, and work conditioning did not relieve Mr. Sweat's symptoms. Dr. Kauffman eventually ordered a functional capacity evaluation. He considered those FCE results at an August 9 visit, and Dr. Kauffman placed Mr. Sweat at maximum medical improvement and assigned a 0% impairment rating. He repeated, "The patient's work related condition is lumbar strain. Patient has multilevel degenerative changes on MRI which are pre-existing and not related to the work event." He also completed a C-30A Final Medical Report stating that Mr. Sweat could return to work without restrictions as of July 24, 2023, and he noted "restrictions due to [d]egenerative condition not work event."

Mr. Sweat returned in October, and Dr. Kauffman ordered a new MRI of the lumbar spine. Notes from a follow-up in February 2024 state that the second MRI showed "progressive disc degeneration L5-S1."

Dr. Kauffman explained his opinion in greater detail at a visit in October 2024:

[T]he mild to moderate disc desiccation at L4-5 and moderate disc dessication at L5-S1 are age-related and are not related to the work related incident[.] . . . [D]egenerative changes of the lumbar spine are a common cause for treatment but this is a pre-existing problem and would be treated under his regular health insurance and not under workmen's compensation.

He further wrote that a second opinion was unnecessary because Mr. Sweat "has received appropriate treatment for the work related condition which is a lumbar strain." In addition, he "[d]iscussed with patient and his wife that Dr. [James] Fish can have a different opinion than I do and that his attorney can attempt to get Workmen's Comp. to approve

2

Dr. Fish as his treating physician." Dr. Kauffman concluded that Mr. Sweat may return as needed.

<em>The independent medical evaluation</em>

To challenge those opinions, Mr. Sweat saw spine specialist Dr. Fish in July 2024.

In a deposition, Dr. Fish testified that he reviewed the imaging from the second MRI, which he said showed "multilevel degenerative changes" and a "left-sided disc herniation at L5-S1, which is the bottom disc in the low back." Mr. Sweat's attorney asked, "[C]onsidering Mr. Sweat's examination, his self-reported history, the records, and the MRI, did you render a causation opinion in this case?" Dr. Fish responded, "[T]he symptoms he was having, low-back pain and lumbar radiculopathy, were the result of the January 2023 injury, and it's my opinion that the disc herniation that he has on his MRI findings is causing those symptoms and is the result of that same incident at work."

Dr. Fish described his impressions of Dr. Kauffman's past treatment as conveyed by Mr. Sweat: prescription medication, topical patches, supervised physical therapy, a TENS unit, and a home exercise program. Dr. Fish disagreed that the permanent work restrictions assigned by Dr. Kauffman do not relate to the work event, explaining, "There's no treatment history for lumbar issues, and now he's got low back pain and radiculopathy as a result of an injury and he is unable to return to his pre-injury work function."

Mr. Sweat's counsel asked if Mr. Sweat could have had the disc herniation before the work event, to which the doctor said yes but added that "a work event can trigger an already existing herniation and make it symptomatic." Dr. Fish repeated his belief that the disc herniation occurred with the work injury.

But he also stated that Mr. Sweat has reached maximum medical improvement for this work injury. Dr. Fish explained that Mr. Sweat would be a candidate "for epidural steroid injections and possibly surgery, but at this phase, this far out, I would have a long talk with that patient before doing surgery. Because the results wouldn't be as consistent as if we had treated with him acutely that way." He also said treatment with a physiatrist might be appropriate in the future. Dr. Fish estimated an impairment rating of 10-12% and agreed that permanent work restrictions are appropriate.

On cross-examination, Dr. Fish said he had not reviewed any treatment records from Dr. Kauffman to generate his report except for the second MRI. Dr. Fish said seeing those records would have been helpful, but he tends to form his opinions "based on the patient's current status." Counsel then asked, "If Dr. Kaufman had an MRI from March of 2023, two months after the accident, and it, in his opinion, it didn't show a disc herniation, you don't have any reason to dispute that, do you?" Dr. Fish said he did not. He further acknowledged that he saw Mr. Sweat once and provided no treatment. Finally, Dr. Fish

agreed that he only reviewed the second MRI and not the one from March 2023, and that he had no basis to say whether it was performed correctly or not.

**Findings of Fact and Conclusions of Law**

To prevail at this expedited hearing, Mr. Sweat must show he would likely succeed at a final hearing in proving entitlement to additional treatment. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, the experts disagreed whether Mr. Sweat's current condition relates to the work incident. Dr. Kauffman has consistently found degenerative changes, which he concluded are not work-related, and he has placed Mr. Sweat at maximum medical improvement for a lumbar strain. In contrast, Dr. Fish diagnosed a disc herniation that he concluded relates to the work accident. He, too, assigned maximum medical improvement, but he also recommended further treatment. So, the threshold task is to determine which expert to credit based on the evidence presented.

Under the Workers' Compensation Law, an employer must furnish treatment "made reasonably necessary by accident." Tenn. Code Ann. § 50-6-204(a)(1)(A). An accident causes the need for medical treatment when it has been shown to a reasonable degree of medical certainty that it contributed more than 50% in causing the need for treatment, considering all causes, in the opinion of a physician. *Id.* at -102(12).

The Court finds that Mr. Sweat was a credible witness. He convincingly testified that, after close to two years of treatment, he still suffers disabling pain from the back injury that has significantly affected his daily life and hampered his ability to earn a living. The Supreme Court has consistently held that an employee's assessment as to his own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *6 (Sept. 12, 2017).

But the Court's decision also requires deference to the medical proof, and in particular the law giving the opinion of the doctor "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)" a rebuttable presumption of correctness. *Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). This means Dr. Kauffman's opinion is presumed correct.

So, the Court must weigh Dr. Fish's opinion to see if it overcomes Dr. Kauffman's, by considering, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

4

Here, both physicians are well-qualified spine specialists, so this factor favors neither.

As to the circumstances of their examination, Dr. Kauffman saw Mr. Sweat ten times (or more) and has treated him conservatively for close to two years; Dr. Fish examined Mr. Sweat only once. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Id.* at 677. This factor favors Dr. Kauffman.

As to the information available to them, Dr. Kauffman reviewed imaging from March 2023 and later imaging from 2024, while Dr. Fish only saw the second MRI results. More importantly, Dr. Fish did not review Dr. Kauffman's treatment notes. Had Dr. Fish reviewed the treating doctor's notes, which include his observations on examination and reasoning at each visit, this likely would have given Dr. Fish greater insight into the doctor's processes and opinions as they evolved over time. On the flipside, Dr. Kauffman did review Dr. Fish's report, but his notes, oddly, do not say why he disagrees with him. He merely states they have different opinions. Regardless, this factor favors Dr. Kauffman.

Dr. Kauffman stated at the first treatment that only a lumbar strain was work-related and any degenerative changes were not. He repeated that pronouncement after each visit—even after the second MRI showed a disc herniation. Mr. Sweat testified that he felt no back pain before the accident, and the Court believes him. Still, Dr. Kauffman's opinion is steadfast, and the Court, Mr. Sweat, and his attorney cannot substitute their judgment for that of a medical doctor, especially one who is presumed correct by law. An employee, legal counsel, and the trial judge "are not medical experts and are ill-suited to make medical determinations." *Torres v. Allvan Corp.,* 2025 TN Wrk. Comp. App. Bd. LEXIS 6, at *14 (Feb. 7, 2025).

In sum, the Court finds that the two doctors' differing opinions are just that—differing opinions. Given this, the Court holds that Mr. Sweat failed to rebut the presumption of correctness afforded Dr. Kauffman's causation opinion. Nothing prevents Mr. Sweat from gathering additional evidence in an attempt to rebut this presumption at another expedited hearing or a compensation hearing.

Moreover, Mr. Sweat has not articulated any basis to designate Dr. Fish as the authorized treating physician. Since Dr. Kauffman has agreed that Mr. Sweat may return as needed, he may do so for any reasonable, necessary, and work-related treatment. *Limberakis*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53 at *7.[1]

---

[1] Since the Court has found that Mr. Sweat's current need for treatment is not related to the work incident, his request for temporary disability benefits need not be addressed.

Finally, a scheduling hearing is set for **May 5 at 11:30 a.m. Central Time.** You must call 615-532-9552 or 866-943-0025 to participate. The Court will set appropriate deadlines at that time.

IT IS ORDERED.

**ENTERED March 6, 2025.**

_____

**JUDGE JOSHUA DAVIS BAKER by interchange**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:

1. Rule 72 Declaration of Joseph Sweat
2. Amended Rule 72 Declaration of Joseph Sweat
3. Second Amended Rule 72 Declaration of Joseph Sweat
4. Deposition Transcript, Dr. James Fish
5. Employer's Exhibits-Medical records, Dr. Christopher Kauffman

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 6, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Adam Brock-Dagnan, employee's attorney | | | X | Adam.brockdagnan@forthepeople.com sshook@forthepeople.com |
| Charles Pierce, employer's attorney | | | X | cepierce@mijs.com kpkudialis@mijs.com |

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*